IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO STEELE,<br><br>                *Plaintiff,*<br><br>v.<br><br>ALLEGHENY COUNTY,<br><br>                *Defendant.* | Civil Action No. 2:21-cv-1076<br><br>Hon. William S. Stickman IV |

### **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Vincenzo Steele ("Steele"), brought this action alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. He takes issue with being disqualified from a Corrections Officer position at the Allegheny County Jail due to limitations with his right arm. Defendant Allegheny County (the "County") filed a Motion to Dismiss. (ECF No. 6). For the following reasons, the County's motion will be granted in part and denied in part.

      **I.**      **STANDARD OF REVIEW**

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262–63 (3d Cir.

2008). Although this Court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If parties present matters outside the pleadings and the court does not exclude them, the motion must be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment if they are integral to the allegations in the complaint and are authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint"); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); *Fallon v. Mercy Cath. Med.*

*Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

## II.    FACTUAL ALLEGATIONS

Steele applied for the position of a Corrections Officer at the Allegheny County Jail, and, on March 11, 2019, he was admitted as a cadet into the Correctional Training Academy ("Academy"). Before admission, he underwent and passed a physical examination that included a complete review of his medial records. (ECF No. 1, ¶¶ 6-9). Steele admits that he "has limitations with his right arm." (*Id.*, ¶ 10).

At the Academy, if a cadet fails any aspect of training, he is dismissed immediately and does not proceed to the next aspect of training. (*Id.*, ¶ 14). Steele took a "defensive tactics" course that included training on how to place handcuffs on an inmate. Officer Pifer, the trainer for Steele's class, tested the trainees at the conclusion of the course. (*Id.*, ¶¶ 11-13). According to Steele, "Officer Pifer concluded that [ ] Steele passed the test, and gave [ ] Steele a 'thumbs up' sign with respect to the handcuffing test." (*Id.*, ¶ 15). Steele then went on to complete the next week's training that involved getting sprayed with pepper spray. Steele also passed the direct observation training tests.

At some point, "Allegheny County Jail management changed its mind with respect to the conclusion that [ ] Steele had passed all the training tests, and concluded that [ ] Steele had not passed all of the defense tactics tests, and put him on leave from training." (*Id.*, ¶¶ 16-17). The County's position was that Steele failed "to successfully complete all aspects of the defensive-

tactics portion of the cadet training," and it sent him for "a fitness-for-duty test to determine whether or not [he] could perform certain defensive-tactics maneuvers that are essential functions of the correctional officer position, and to determine if [Steele's] performance of correctional officer duties could pose a direct threat to [himself] or others." (ECF No. 1-3).

A clinical neurologist, Richard B. Kasdan, M.D., evaluated Steele and also reviewed video footage of Steele's training. Within a reasonable degree of medical certainty, Dr. Kasdan found that Steele's reduced dexterity of his right hand/arm impaired his ability to perform the "praying hand control technique," the "push" speed handcuffing method, the "same side grab," and to use both his left and right arms while on the ground to stop a choking or striking attack from an inmate. (ECF No. 1-2, pp. 2-3). According to Steele, because the instructions to Dr. Kasdan "stated that passing the various maneuvers required 'equal' dexterity in both hands [. . .] it was a foregone conclusion that [ ] Steele would not pass defensive tactics." (*Id.*, ¶ 19). By October 28, 2019, letter to Steele, the County noted that after having received the final report from the physician who conducted the fitness-for-duty testing, it met with Steele "to discuss possible accommodations that might allow [him] to perform these essential functions." (ECF No. 1-3, p. 2). Since Steele had not requested an accommodation, the County gave him five business days from the receipt of the October 28, 2019, letter to request an accommodation. Absent such a request, the County informed Steele that it "would initiate the process of terminating you from the cadet program and from your employment with the Allegheny County Bureau of Corrections." (*Id.*).

The Court is unclear as to what occurred next. From what it can gather, Steele was "removed" as an Allegheny County Bureau of Corrections employee. On February 2, 2020, Steele was re-hired by the County as a Clerk with the Allegheny County Department of Court

Records. Steele's union Clerk position pays $15.00 an hour. The Correction's Officer position paid $25.00 an hour. (ECF No. 1, ¶¶ 26-27, 30).

### III. ANALYSIS

"Congress enacted the ADA in 1990 in an effort to prevent otherwise qualified individuals from being discriminated against in employment based on a disability." *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 579 (3d Cir. 1998). The ADA prohibits covered entities from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a claim for relief under the ADA, a plaintiff must allege facts demonstrating "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Eshleman v. Patrick Indus.*, 961 F.3d 242, 245 (3d Cir. 2020) (internal quotations omitted) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). "The existence of a *prima facie* case of employment discrimination is a question of law that must be decided by the court but the *prima facie* test remains flexible and must be tailored to fit the specific context in which it is applied." *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007).

#### A. Count I – Regarded as Disabled

The ADA considers a person disabled if they: "(A) [have] a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) [have] a record of such an impairment; or (C) [is] regarded as having such an impairment." 42

5

U.S.C. § 12102(1). To be an individual with a disability, an individual is only required to satisfy one prong. Here, Steele is proceeding under the third prong – "regarded as" having a disability. He admits that he has right arm limitations. Nonetheless, he takes issue with the County regarding him as disabled and disqualifying him from the Corrections Officer position because of these limitations. Steele maintains that he was able to perform all of the essential functions of the position. (ECF No. 1, pp. 3-4).

To be "regarded as" having a disability under the ADA, a plaintiff must allege facts to show he "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). An employee is "regarded as" disabled when an employer "'misinterpret[s] information about an employee's limitations to conclude that the employee is incapable of performing' his or her job requirements." *Eshleman*, 961 F.3d at 245. Even if an employer asserts, or ultimately establishes, a defense to having taken a prohibited action against an employee because of the employee's perceived disability, the employer has still "regarded" the employee as having a disability. 29 C.F.R. § 1630.2(l)(2). Essentially, the ADA also protects a job applicant that the employer wrongly regards as impaired. 42 U.S.C. § 12102(1)(C). The test is whether the employer perceived him as impaired, "whether or not the [perceived] impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

Steele is forthright in admitting that he had right arm limitations, but adamant that he was wrongly perceived as impaired. The fitness-for-duty evaluator opined to a reasonable degree of medical certainty that Steele's right arm/hand impairment prevented him from performing certain defensive tactic maneuvers. Steele has plausibly alleged that the County regarded him as

6

disabled after that evaluation, and in support thereof he notes that the County offered him the opportunity to identify accommodations that might enable him to perform the essential functions of the Corrections Officer position. Drawing all inferences in favor of Steele—as the Court must at this stage—it cannot be said that, as a matter of law, his alleged disability is transitory and minor. He has stated a claim for discrimination based on perceived disability.

Steele has also plausibly alleged that he was qualified for the Corrections Officer position. A "qualified individual" under the ADA is defined as one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The burden is on a plaintiff to show that he is a "qualified individual." *Buskirk v. Apollo Metals*, 307 F.3d 160, 168 (3d Cir. 2002). In order to determine whether someone is a qualified individual, the Third Circuit uses a two-part test. *Gaul v. Lucent Tech.*, 134 F.3d 576, 580 (3d Cir. 1998). First, a court must consider whether "the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." *Id*. Second, a court must consider "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id*.

Steele claims that he satisfied the prerequisites to be a Corrections Officer by passing the initial physical examination and being admitted to the Correctional Training Academy as a cadet. Then, he passed the required testing, which including the handcuffing test, and it was only after he passed all the defensive tactics tests that "Allegheny County Jail management changed its mind with respect to the conclusion that [ ] Steele had passed all the training tests [. . .]." (*Id.* ¶¶ 16-17). Steele claims that he would have been hired but for failing the allegedly biased fitness-for-duty evaluation, and he could have performed the essential functions of the position. The

fitness-for-duty evaluator refused to answer the question "would Cadet Steele's performance of any job duty pose a "direct threat" to himself or others?" (ECF No. 1-2). At this early stage of the case, Steele has plausibly claimed that he was qualified for a Corrections Officer position.

Lastly, to plausibly allege discrimination, Steele need only give the County fair notice of his claim and "raise the reasonable expectation that discovery will uncover evidence of discriminatory motive." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 267 (3d Cir. 2021) (internal quotation marks omitted); *accord Twombly*, 550 U.S. at 555. Steele claims that the job criteria–including whether he could perform certain defensive tactic maneuvers–were applied in a discriminatory way after he completed the majority of his training to preclude him from becoming a Corrections Officer at the Allegheny County Jail. He questions the motivations for requiring him to obtain the fitness-for-duty evaluation when his trainer found he passed the handcuffing test. Steele's allegations are sufficient at this initial stage of the case for him to proceed to discovery on Count I.

The County's motion to dismiss Count I will be denied. Steel may ultimately be unable to prove his claim (as the County argues), but, at this stage, his averments plausibly suggest that he was able to perform the essential functions of a Corrections Officer position and was a qualified individual under the ADA.

### B. Count II – Failure to Accommodate

To the extent that Steele alleges that the County failed to accommodate what they perceived to be his disability, he has failed to state a claim. ADA discrimination includes "a failure to make reasonable accommodations for an otherwise qualified employee's known physical limitations." *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004). To state a failure-to-accommodate claim in violation of the ADA, a plaintiff must

allege: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination ... [which] in this context include[s] refusing to make reasonable accommodations for a plaintiff's disabilities." *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 191 (3d Cir. 2009). The 2008 Amendments to the ADA added a provision which provides that employers "need not provide a reasonable accommodation ... to an individual who meets the definition of disability in [Section 12102(1)(C): "regarded as having an impairment"]." 42 U.S.C. § 12201(h); *see also Robinson v. First State Cmty. Action Agency*, 920 F.3d 183, 186 (3d Cir. 2019) ("an individual who demonstrates that she is 'regarded as' disabled, but who fails to demonstrate that she is actually disabled, is not entitled to a reasonable accommodation.").

First, the failure to accommodate theory does not apply to "regarded as" claims. Consequently, to the extent that Steele alleges a failure to accommodate based on a "regarded as" definition of disability, his claim is prohibited and does not state a claim upon which relief may be granted. This is particularly true where Steele concedes that he is not alleging he was disabled under the ADA. (ECF No. 11, pp. 5-6).

Second, Steele has not plausibly alleged that the County refused to accommodate what they perceived to be his disability. The Third Circuit has made clear that an individual must put a covered employer on notice of a request for an accommodation, stating "while the notice [of a desire for an accommodation] does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation,' the notice nonetheless must make clear that the employee wants assistance for his or her disability." *Jones v. United Parcel Serv.*, 214 F.3d 402, 408 (3d Cir. 2000) (quoting *Taylor*, 184 F.3d at 313). Here, by October 28,

2019 letter to Steele, the County noted that after having received the final report from the physician who conducted the fitness-for-duty testing, it met with Steele "to discuss possible accommodations that might allow you to perform these essential functions." (ECF No. 1-3, p. 2). Because Steele had not requested an accommodation, the County gave him five business days from the receipt of the October 28, 2019 letter to request an accommodation. Absent such a request, the County informed Steele that it "would initiate the process of terminating you from the cadet program and from your employment with the Allegheny County Bureau of Corrections." (*Id.*). What happened next is not specifically pled, but from what the Court can gather, Steele was "removed" as an Allegheny County Bureau of Corrections employee in November 2020 and then re-hired by the County on February 2, 2020 for a Clerk position with the Allegheny County Department of Court Records.

This is not a situation where Steele requested assistance for any disability or that the County then refused to grant the request. Since there is no evidence from which a request for accommodation could be inferred, the County was under no legal obligation to engage in the interactive process. Steele cannot maintain a claim for failure to accommodate and Count II will be dismissed.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

_4-26-22_____
Dated